IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 28, 2005

## STATE OF TENNESSEE v. JEFFERY SCOTT SHERRILL

**Appeal from the Circuit Court for Rhea County**
**No. 15481    Thomas W. Graham, Judge**

_____

**No. E2004-02914-CCA-R3-CD - Filed September 16, 2005**

_____

The defendant, Jeffery Scott Sherrill, pleaded guilty to second degree murder. After conducting a sentencing hearing, the trial court sentenced the defendant to serve a 25-year sentence as a Range I violent offender. Aggrieved of his sentence, the defendant brings the instant appeal challenging his sentence as excessive. After a thorough review of the record and applicable law, we affirm the judgment of the lower court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Phillip A. Condra, District Public Defender; and B. Jeffery Harmon, Assistant District Public Defender, for the Appellant, Jeffery Scott Sherrill.

Paul G. Summers, Attorney General & Reporter; Seth P. Kestner, Assistant Attorney General; and James Michael Taylor, District Attorney General, for the Appellee, State of Tennessee.

### OPINION

On December 24, 1999, the defendant and his girlfriend, Kristy Howell, attended a Christmas Eve party at a friend's residence. After a fight broke out at the party, the defendant and Ms. Howell left the party in the vehicle of another friend. The defendant originally requested to be driven to Wolf Creek. The driver, who was intoxicated, told the defendant that he was unwilling to drive the defendant that far. The driver agreed, however, to drive the defendant and Ms. Howell to the residence of the victim, James Lowell Nixon. The defendant had known the victim for approximately ten to fifteen years, and the defendant had lived with the victim periodically during that period of time.

According to the defendant's testimony at his sentencing hearing, the defendant had a sexual encounter with a female other than Ms. Howell at the victim's house four or five days prior

to the victim's murder. Ms. Howell learned of the encounter when she entered the victim's house at that time and discovered the defendant with this other female. The defendant testified that Ms. Howell was angry with the victim for allowing the defendant to use his residence to meet another female.

On the night of the murder and shortly after the defendant and Ms. Howell arrived at the victim's residence, Ms. Howell and the victim had an argument, and the defendant physically separated the two individuals. Moments thereafter, Ms. Howell picked up a hammer in the residence and hit the victim with the hammer in the head. The first blow incapacitated the victim, and Ms. Howell continued to strike the victim in the head approximately six more times. The defendant testified that he did not intervene because he was scared that Ms. Howell might attack him and because the whole incident happened very quickly.[1] Afterwards, the defendant took the hammer from Ms. Howell, put it in a sink, and ran water over it. Additionally, the defendant cut the gas line in the victim's residence. The defendant and Ms. Howell then went to another friend's residence where Ms. Howell called some relatives and asked them for money to enable her to flee town because she had just hit a man with a hammer and killed him. One of these relatives contacted the police, who in turn located the victim, who was dead when they arrived at his residence. The police arrested Ms. Howell and the defendant. Ms. Howell and the defendant entered separate guilty pleas to second degree murder.

Thereafter, the trial court conducted a sentencing hearing in which the defendant and his mother testified on the defendant's behalf. The court considered this testimony, the defendant's presentence report, and arguments of counsel and sentenced the defendant to serve a maximum 25-year sentence within his applicable range of 15 to 25 years. The court enhanced the defendant's sentence based on the defendant's extensive criminal history and because the defendant was on parole at the time he committed the instant offense. The court found that no mitigating factors were applicable to the defendant's sentence.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the defendant. *Id.* In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. *Id.* If appellate review reflects that the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must

---

[1] After his arrest, the defendant gave four different statements to law enforcement officers. In some of the statements, the defendant claimed that Ms. Howell delivered all of the blows, and in other statements, the defendant claimed that he delivered some or all of the blows. The version of the crime recounted above has been summarized from the defendant's testimony at his sentencing hearing. However, as noted *infra*, the trial court expressed doubt about the accuracy of this version of the crime.

affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The transcript of the defendant's sentencing hearing reflects that the trial court made careful and detailed findings when making its sentencing determination. Accordingly, we will afford the court's determinations a presumption of correctness. The trial court correctly began with the midpoint in the defendant's sentencing range, which is 20 years. Tenn. Code Ann. §§ 39-13-210(b) (2003) (classifying second degree murder as a Class A felony), 40-35-112(1) (Range I sentence for Class A felony, not less than 15 nor more than 25 years), 40-35-210(c) (presumptive sentence for Class A felony is midpoint of range if there are no applicable enhancement or mitigating factors).

The court determined that no mitigating factors were applicable to the sentencing determination but applied two enhancement factors: a previous history of criminal convictions or behavior, *id.* § 40-35-114(2), and that the defendant had been released on parole when he committed the instant offense, *id.* § 40-35-114(14)(C). The court determined that the application of the first factor, the defendant's substantial history of criminal convictions, enhanced the defendant's presumptive 20-year sentence by three years. The court then considered the final enhancement factor, that the defendant was on parole when he committed the instant offense, and announced the defendant's 25-year sentence.

The defendant argues that the trial court erred by failing to consider three applicable mitigating factors: factor (4), that the defendant played a minor role in the commission of the offense; factor (11), that the defendant committed the crime under such unusual circumstances that it is unlikely that he was motivated by a sustained intent to violate the law; and factor (13), that the defendant had a gentle nature and had expressed remorse. *Id.* § 40-35-113(4), (11), (13). The state counters that each of the defendant's proposed mitigating factors are not applicable to his sentence and that the trial court correctly applied two enhancement factors and sentenced the defendant to serve a 25-year sentence.

We first note that the defendant does not challenge the applicability of the two enhancement factors applied to his sentence, that he has an extensive prior criminal record and that he committed the instant crime while on parole. We hold that there is sufficient evidence in the record to support the trial court's application of these two factors. Next, we turn to the defendant's proposed mitigating factors. The defendant asserts that the court should have reduced his sentence because he played a minor role in the commission of the instant offense. In support thereof, the defendant asserts that his sentencing hearing testimony reflects that he did not deliver the fatal blows to the victim and merely helped conceal the evidence of the crime after it had been committed. The defendant asserts that because his role in the crime was minor, the state proceeded under the theory of criminal responsibility when prosecuting him for this crime.

However, the record of the defendant's plea submission hearing and sentencing hearing reflects that the defendant gave several contradictory versions of the events of the instant crime to the police, and in one version, the defendant admitted repeatedly striking the victim with

a hammer. Moreover, after the defendant testified at his sentencing hearing, the trial court opined that the defendant's sentencing hearing testimony recounting the events of the crime was not credible, stating "I'm not convinced the way he told it is exactly the way it happened." We note that the assessment of witness credibility is entrusted to the sound discretion of the trial court. *See State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Moreover, the court further determined that the facts of the defendant's case did not warrant the application of this mitigating factor after finding that the defendant either delivered some of the blows himself or watched and failed to intervene as his co-defendant delivered those blows. We find that the record supports the court's refusal to apply this mitigating factor.

Next, we address the defendant's argument that the trial court erroneously failed to apply mitigating factor (11), that the offense was committed under such unusual circumstances that it is unlikely he sustained an intent to violate the law. Tenn. Code Ann. § 40-35-113(11) (2003). The defendant asserts that the evidence demonstrates that he was good friends with the victim and that he went to the victim's home on the night of his murder only by happenstance. In short, the defendant asserts that his testimony supports the application of this factor. However, when addressing the applicability of this factor, the trial court again alluded to its conclusion that the defendant's sentencing hearing testimony was not credible. Again, the court was in the best position to assess the defendant's credibility, and we hold that the record supports the court's refusal to apply this factor. By his own admission, the defendant attempted to conceal evidence of the crime, and according to some of his statements made to law enforcement officers, he struck the victim with a hammer.

Finally, the defendant argues that the court should have reduced his sentence under the catch-all provision of the statutory mitigation factors based on his reputation for having a gentle nature and his remorsefulness. Tenn. Code. Ann. § 40-35-113(13) (2003). Although the trial court did find that the defendant had expressed remorse, which is a proper basis for mitigation of a sentence, *see State v. Leggs*, 955 S.W.2d 845, 850 (Tenn. Crim. App. 1997), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000), the court questioned whether the defendant was remorseful because he had committed a heinous crime or whether he was remorseful because he had been successfully prosecuted for his crime and would be serving a substantial incarcerative sentence. Absent a clear finding that the defendant was remorseful for his commission of the second degree murder of the victim, we cannot say that the court erred by failing to apply this mitigating factor. Moreover, although the defendant asserts that he has a peaceable and gentle nature, the only evidence introduced to support the application of this mitigating factor is the defendant's testimony, which the trial court found incredible, and the testimony of the defendant's mother, which the court could have reasonably found to be biased. Accordingly, we conclude that the trial court acted properly when refusing to apply these proposed mitigating factors.

In conclusion, we hold that the defendant's 25-year sentence is reasonably supported by the defendant's history of criminal behavior, which includes 27 convictions[2] all of which he amassed in a 10-year period of time, as well as the fact that the defendant had been released on parole when he committed the instant crime. The defendant testified that his extensive criminal history was the result of his attempts to support his alcohol and drug addictions without being legally employed, and the court found that the commission of the instant offense, which according to the defendant occurred while he was intoxicated, was the unfortunate culmination of a life devoted to supporting his habits. We agree and accordingly affirm the judgment of the lower court.[3]

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[2] The majority of the defendant's convictions were for misdemeanor offenses. The state filed notice of its intent to seek Range II classification for the defendant on May 10, 2004, and the defendant pleaded guilty to the second degree murder of the victim as a Range I violent offender on May 12, 2004.

[3] We further note that the trial court declined to consider other potentially applicable enhancement factors, such as the victim's particular vulnerability due to age or disability, *see* Tenn. Code. Ann. § 40-35-114(5) (2003), based on the then-recently announced United States Supreme Court case of *Blakely v. Washington*, 542 U.S. 296, 125 S. Ct. 2531 (2004). The record reflects that the victim was a diminutive man in his sixties whose physical state had been weakened by his life of alcohol and substance abuse. *See State v. Nathaniel Lee Jackson*, No. M2002-02248-CCA-R3-CD, slip op. at 15 (Tenn. Crim. App., Nashville, June 7, 2004) (affirming application of enhancement factor (5) when defendant bound a 69-year-old woman); *State v. Butler*, 900 S.W.2d 305, 313 (Tenn. Crim. App. 1994) (holding that application of enhancement factor (5) is only applicable if the state establishes that the victim's age or disability made him or her unable to resist the commission of the crime). However, at the time of the defendant's sentencing hearing, a sentencing court's ability to apply this factor absent a jury-finding had been called into question by *Blakely*. Accordingly, the state declined to argue its applicability, and the trial court failed to consider it and other enhancement factors. Since the date of the defendant's sentencing hearing, our supreme court has held that *Blakely* does not denote any constitutional infirmities in Tennessee's sentencing procedures. *See State v. Gomez*, 163 S.W.3d 632 (Tenn. 2005), *pet. to rehear den'd* (Tenn. 2005).